IMG-034                                        NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 11-2546
_____

SVETLANA MIRONENKO,
                                        Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                        Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A097-480-041)
Immigration Judge:  Honorable Charles M. Honeyman

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
February 22, 2012
Before:  SLOVITER, GREENAWAY, JR., AND COWEN, Circuit Judges

(Opinion filed: February 23, 2012)
_____

OPINION
_____

PER CURIAM

Svetlana Mironenko, a citizen of Russia and a native of Ukraine in the former

Union of Soviet Socialist Republics, entered the United States using a temporary visa on

March 3, 2000, and did not leave when her visa expired.  In 2003, she filed an application

for asylum, withholding, and relief under the Convention Against Torture ("CAT") based

on her experiences as a Baptist in Russia and Ukraine. The Government charged her as removable for overstaying her visa, which she conceded.

The Immigration Judge ("IJ") denied Mironenko's applications for relief from removal. The IJ denied the asylum and withholding applications on the basis of an adverse credibility finding and the conclusion that Mironenko had not adequately corroborated her claims. The IJ then held that Mironenko was not eligible for asylum in any event because the application was untimely filed (rejecting, in the process, on the basis of credibility concerns, Mironenko's claim that, in February 2001, she met with, and paid, a person who represented that he would file an asylum application for her). Assuming the veracity of Mironenko's claims, the IJ also held that Mironenko had not met the standard for CAT relief.

Mironenko filed an appeal with the Board of Immigration Appeals ("BIA"). The BIA agreed with the IJ that Mironenko was statutorily ineligible for asylum (and that no exceptional circumstance excused the untimely filing). The BIA also held that the adverse credibility finding, which it characterized as an alternative basis for the asylum denial and the basis for the denial of withholding, was not clearly erroneous. The BIA further agreed with the IJ that Mironenko did not submit sufficient corroborative evidence. The BIA rejected Mironenko's argument that the IJ did not consider the corroborative evidence that she did submit. The BIA also held that Mironenko had not shown that she was eligible for CAT relief.

Mironenko presents a petition for review. She contends generally that she is entitled to asylum, withholding, and CAT relief. She claims that the BIA erred in affirming the IJ's decision and did not provide her the individualized determination to which she was due. Also, and more specifically, she argues that the BIA erred in affirming the IJ's negative credibility determination because the determination was not based on record evidence and violated her right to due process. She also contends that the finding that she failed to corroborate her claims is not supported by the record and that the BIA erred in finding that she failed to meet the extraordinary circumstance exception to the filing deadline.

The Government opposes her petition, stating that we are without jurisdiction to review the determination that Mironenko's failure to file a timely asylum application was not excused by extraordinary circumstances. The Government also argues that no record evidence compels a conclusion different from those reached by the agency about Mironenko's credibility. The Government contends that the agency cited specific and cogent reasons that go to the heart of her claim. The Government also states that the agency reasonably required corroboration and concluded that the failure to provide corroboration undercut the claims. Further, the Government argues that the ruling on the CAT claim was correct.

First, we define the scope of our jurisdiction. We have jurisdiction to review constitutional claims and questions of law but not factual or discretionary determinations concerning the timeliness of Mironenko's asylum application. See 8 U.S.C.

3

§§ 1158(a)(3) & 1252(a)(2)(D); Sukwanputra v. Gonzales, 434 F.3d 627, 634-35 (3d Cir. 2006). In relation to the ruling that her application was not timely filed, Mironenko challenges two bases for the BIA's rejection of her claim that exceptional circumstances excused the late filing. However, these bases, an adverse credibility finding and the conclusion that Mironenko could not corroborate that prior counsel existed or that she had any agreement with prior counsel to file an earlier asylum application, are factual determinations outside the purview of our review. Although she also protests that the BIA did not meaningfully review the entire record and thereby deprived her of due process, we conclude that this claim is without merit based on the record before us.

We otherwise have jurisdiction over the issues raised in Mironenko's petition pursuant to 8 U.S.C. § 1252(a). We review the final order of the BIA, but to the extent that the BIA adopts parts of the IJ's opinion, we review the IJ's opinion to determine whether the BIA's decision to defer to the IJ was appropriate. Zhang v. Gonzales, 405 F.3d 150, 155 (3d Cir. 2005). We consider questions of law *de novo*. See Gerbier v. Holmes, 280 F.3d 297, 302 n.2 (3d Cir. 2002). We review factual findings, like an adverse credibility determination, for substantial evidence. See Butt v. Gonzales, 429 F.3d 430, 433 (3d Cir. 2005). We evaluate whether a credibility determination was "appropriately based on inconsistent statements, contradictory evidences, and inherently improbable testimony . . . in view of the background evidence of country conditions." Chen v. Ashcroft, 376 F.3d 215, 223 (3d Cir. 2004). We afford an adverse credibility

4

finding substantial deference, so long as the finding is supported by sufficient, cogent reasons. See Butt, 429 F.3d at 434.

After reviewing the matter, we cannot say that the record compels a conclusion different from the one reached by the agency in regards to the credibility determination. In her affidavit, Mironenko related an account of nine attacks between 1982 and 1999. The first occurred when she, at 15 years of age, was returning from worship. Describing it in her affidavit, she stated that she and unidentified others were attacked by a group.[1] She suffered a blow to the back of her head, which resulted in a concussion and hospitalization. In her testimony, however, she added information to her account, stating that the attackers made several statements during the attacks, including, "Why are you singing those songs? Why are you wearing those hankerchiefs? You have to change your religion." R. 250. The IJ reasoned that this inconsistency goes to the heart of Mironenko's claim[2] because the added statements were an attempt to establish a nexus between the attack and a protected ground.

The second attack reported by Mironenko occurred on the day of her baptism. In her affidavit, she described screaming and cursing from the riverbank of the river where

---

[1] In her affidavit, she originally described these persons as a group of nationalists wearing khakis and armbands, but later filed a correction to specify that the group consisted of persons who harassed Baptists and Evangelical Christians. (She explained that someone who helped her with her affidavit had urged her to exaggerate.)

[2] In a pre-REAL-ID Act case, which this is, the discrepancies identified by the agency must go to the heart of the claim to support the adverse credibility determination. See Gao v. Ashcroft, 299 F. 3d 266, 272 ( 3d Cir. 2002).

the ceremony was taking place, followed by an attack that led to the death of three persons also being christened (she reported that the river ran red with blood). Also, in her affidavit, she reported the date as June 30, 1985. When she testified, she first described the baptism as occurring in June 1989 (later, she changed her testimony to state that it was July 13, then June 13, then June 30, 1985). Also, although she mostly described the baptism as occurring in Shostka, Ukraine, she responded to a question asking whether she knew the persons killed with the response, "Not very well. You see in the city of Murmansk [interruption for the spelling of Murmansk] you [sic] talking about a city. Murmansk [in Russia] is a city. It's a big place." R. 253-54. After her counsel prompted her that the baptism was in Shostka, the IJ asked where the event occurred, to which Mironenko responded "Shostka. Shostka. You see Shoska also has prayer houses." Id. at 254. Also relating to her baptism, she did not state, in her affidavit, that she was hit or hurt by the assailants. However, on direct examination at her hearing, directly after testifying that young men came into the water with batons, she stated that she was hit (although she also said that she did not sustain an injury). On cross-examination, she clarified that she was hit with a hand but "sustained no injuries whatsoever." R. 316.

The IJ also pointed to inconsistencies in Mironenko's accounts of two other attacks. On direct examination, Mironenko stated that, in 1995, she and her husband were walking home from a prayer house when they were attacked by four or five individuals wielding sticks and batons. She testified that "[s]imply, [the attackers] did not say anything. All they did [was] use their batons or sticks." R. 264. However, on

6

cross-examination she said that the assailants said something to them during the incident (and that she did not recall testifying to the contrary). R. 359. In relation to an attack on New Year's Eve in 1996, Mironenko testified that assailants who broke into her home where she was celebrating with friends told her and her friends to change their religion, and said "[u]p to a point that you change your religion, we will be after you, we will be literally persecuting you." R. 94. However, in her affidavit, Mironenko did not include information about any statements made by the intruders, which, as the IJ noted, relate to the heart of Mironenko's claim because they provide a nexus between the attack and the protected ground.

Also, despite saying that she had told the IJ everything, R. 379, Mironenko omitted two incidents from her testimony that she had included in her affidavit. The IJ noted that the incidents omitted were not insignificant parts of her claim of persecution, as one incident resulted in fractured ribs and a month's absence from work and the other resulted in her being hospitalized for a week.

Furthermore, Mironenko offered a shifting story about why it took her longer than her husband to leave Russia, first stating that it was a visa problem, then claiming it was a passport issue, and then finally explaining that it took time to reach an agreement with her first husband about the care of their children. Also, as the IJ detailed, Mironenko also presented different accounts of how she completed the asylum application she filed in 2003.

7

Given the inconsistencies and omissions the IJ found, there is a basis in the record for the adverse credibility determination. The BIA did not err in affirming the finding. Despite her claim to the contrary, neither the IJ's nor the BIA's consideration of the matter violated Mironenko's right to due process.

The BIA also affirmed the IJ's determination that Mironenko had not submitted sufficient corroborative evidence. In considering whether corroboration was properly required, we consider whether the agency has (1) identified facts for which it is reasonable to expect corroboration; (2) inquired as to whether the applicant has provided information or corroboration in the record; and (3) analyzed whether the applicant has adequately explained his or her failure to do so. See Abdulai v. Ashcroft, 239 F.3d 542, 554 (3d Cir. 2001). The agency chose facts for which corroboration was reasonably expected. The IJ looked for affidavits from individuals with knowledge of the attacks Mironenko described. In doing so, it may have been unreasonable to look for an affidavit from one of Mironenko's sons, who was only about 8 to 13 at the relevant times, although Mironenko did testify that her son was aware of at least one hospitalization and that she keeps in regular contact with him. However, the general analysis, including the conclusion that Mironenko did not provide sufficient corroborating evidence to overcome the adverse credibility finding, is supported by the record.

Although the IJ accepted Mironenko's statement that some of the attacks occurred too long ago to find witnesses, the IJ expected Mironenko to submit evidence from her parents about the attacks. In doing so, the IJ did not ignore the affidavit from her mother

8

that Mironenko produced, as Mironenko argues. The IJ (and the BIA) noted it, but found it too general and lacking corroboration of specific attacks. Indeed, the affidavit is very general (stating merely that Mironenko is a Baptist who was "water-baptized" and that her family has "constantly been persecuted"). R. 499. Mironenko did not provide an affidavit from her father, whom she had identified as reporting an early attack to the police. The agency considered, but rejected Mironenko's explanation, which essentially was that she did not know to procure that information and that her parents live together, so she did not know she would need statements from both. As the BIA noted, her claim that she did not know that she needed to procure corroborating evidence is undermined by the facts that she did ask her mother for an affidavit and that the IJ had discussed the need for corroboration at an earlier hearing, R. 209-12.

Mironenko contends that the agency did not properly credit her husband's affidavit, which included similar accounts of three attacks. She contends that the treatment of the affidavit was akin to the impermissible use of the "missing witness rule" that informed an adverse credibility determination in Tabaku v. Gonzales, 425 F.3d 417, 421-22 (7th Cir. 2005). However, in this case, unlike in Tabaku, the IJ did not base the adverse credibility determination in part on her husband's failure to testify. As the BIA explained, the IJ merely gave limited weight to the document.

The IJ also looked for medical evidence that would verify Mironenko's claims, as Mironenko stated that she had gone to the hospital several times for treatment after attacks. Mironenko stated that her mother failed to get any hospital records, and her son

9

refused to try to obtain them. The IJ noted that the mother's affidavit included no description of any efforts to get the records. After considering why Mironenko did not try to obtain them herself, the IJ rejected Mironenko's statement that she did not because it is "impossible" to get the truth "over there." The IJ noted that Mironenko could not really believe that if her other assertion, that she requested family members to get the records, was true. Mironenko claims that the medical evidence that she provided was not properly evaluated. However, it was considered; it was given limited weight because it was not contemporaneous with her injuries and it did not describe all the injuries she purported to have suffered (although the IJ and BIA noted that it confirmed one injury, a broken arm). The IJ also considered that Mironenko had not produced any police records. Asked about their absence, Mironenko offered that she had no records because she did not know she needed them and that she and her husband "were running." However, as noted above, there is evidence she was apprised of the need for corroboration. Also, there was a gap of years between the last incident in Russia and her departure for the United States.

In short, the three part analysis required by Abdulai was properly performed. Furthermore, as noted above, the adverse credibility determination finds support in the record. Accordingly, the BIA did not err in denying Mironenko's withholding claim based on the adverse credibility finding and the lack of corroboration. Also, we conclude that the BIA did not err in concluding that Mironenko did not meet the standard for CAT relief. Mironenko did not establish that it is more likely than not that she will be tortured

10

upon her return to Russia.  For these reasons, we will deny Mironenko's petition for review.